JOSEPH L. O'BRIEN CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 69785.   Filed February 13, 1961.

*Francis T. Anderson, Esq.*, for the petitioner.
*Albert Squire, Esq.*, for the respondent.

#### OPINION.

WITHEY, *Judge:* Respondent has determined a deficiency in the income tax of petitioner for the year 1955 in the amount of $14,055.60. The only issue to be decided is whether petitioner is entitled to a dividends-received deduction for dividends paid upon stock purchased by petitioner prior to the closing of the purchase transaction. Another issue raised by amended pleadings has been disposed of by stipulation of the parties.

All of the facts herein have been stipulated and are so found.

Petitioner is a corporation organized on December 22, 1954, under the laws of Pennsylvania. Its first income tax return was for the period December 22 to December 31, 1954. Thereafter, its returns were filed on a calendar year, cash basis. Petitioner's return for the year 1955, the year involved herein, was filed with the district director of internal revenue at Philadelphia, Pennsylvania. Accompanying the filing of its first return was a letter to the director, the body of which contained the following:

This Corporation was organized under the laws of the State of Pennsylvania on December 22, 1954. From that date to December 31, 1954, there were no Assets or Liabilities acquired and there was no business transacted which would reflect Income or Expenses.

On December 7, 1954, American Locomotive Company (hereinafter referred to as American) wrote to Sutro Bros. & Co., stockbrokers (hereinafter referred to as Sutro), to confirm an understanding regarding the proposed purchase by Sutro from American of 53,000 shares of the outstanding common stock of General Steel Castings Corporation, a Delaware corporation (hereinafter referred to as General), as follows:

*December 7, 1954*

Sutro Brothers
*120 Broadway*
*New York, N.Y.*
Gentlemen:

This will serve to confirm our understanding with you relative to your purchase of 53,000 shares of the outstanding common stock of General Steel Casting Corporation, of which we are now the owner.

Subject to the provisions set forth below, we agree to sell such shares to you, and you agree to buy the same from us, at a purchase price of $20.00 per share, making an aggregate purchase price of $1,060,000. It is understood that no commissions will be payable by us in connection with this transaction, and by acceptance of this letter you agree to indemnify us for liability of any such commissions.

As we have advised you, an opinion has been requested from the Securities Exchange Commission to the effect that the sale of these shares by us will not require the filing of a registration statement under the Securities Act of 1933, as amended. We hope to obtain a so-called "no action" letter in this regard from the Securities Exchange Commission sometime next week. It is understood that upon our receipt of such a "no action" letter on or before December 28, 1954, we shall deliver on not less than two, and not more than three, business days notice to you after such receipt a certificate or certificates for the shares referred to above, duly endorsed for transfer and with federal and state transfer stamps attached, to you and that you will pay us the purchase price therefor. If a "no action" letter is not received on or before the date mentioned above, we will request General Steel Castings Corporation to file an appropriate registration statement and to comply with the other requirements of the Securities Act of 1933 to the end that the purchase and sale of the above securities may be legally consummated. If such a registration statement is so filed and becomes effective within the time limit hereinafter set forth, we will deliver the certificate or certificates for the above-mentioned shares, duly endorsed for transfer and with federal and state transfer stamps attached, to you against receipt of the purchase price therefor on two business days notice to you but not later than three business days after the effective date of the registration statement.

If a "no action" letter is not received from the Securities Exchange Commission on or before December 28, 1954, and if a registration statement as aforesaid with respect to these securities fails to become effective on or before April 15, 1955, this agreement shall become ineffective and there shall be no further rights or liabilities on the parts of either of us because of the transaction covered hereby.

If the transaction is consummated as herein provided, all dividends paid or payable on the said stock after the date hereof shall be your property and shall be paid over at the time of payment of the purchase price, but without liability for interest thereon.

If it becomes necessary to file a registration statement in order to consummate the transaction, you will pay interest to us on the purchase price ($1,060,000) at the rate of 3% per annum from December 28, 1954, to the date of delivery. Such interest will be payable to us on such delivery date.

If the foregoing meets with your approval kindly indicate your assent by signing the endorsement at the foot of this letter and returning the same to us, retaining the copy for your files.

Very truly yours,

AMERICAN LOCOMOTIVE COMPANY
By /s/   Herman Press
*Treasurer*

ACCEPTED.
*December 7, 1954*
SUTRO BROTHERS
By /s/   Charles A. Bezer

Previously and on October 29, 1954, General had declared a regular dividend of 30 cents per share and an extra dividend of 30 cents per share on its common stock. These dividends were declared to be payable and actually were paid on December 31, 1954, to stockholders of record on December 20, 1954. These dividends on the 53,000 shares in question, totaling $31,800, were paid to American which was the stockholder of record on December 20, 1954. American reported the $31,800 as a dividend received on its income tax return for the year 1954.

The Securities and Exchange Commission under date of January 11, 1955, issued a "no action" letter to American in regard to the proposed sale of 53,000 shares of General common stock. The sale of this stock was consummated on January 18, 1955, in the manner described in a letter of that date addressed by W. J. Bolte of American to William McDermott, attorney for petitioner, as follows:

The sale of 53,000 shares of common stock of General Steel Castings Corporation by our Company to Sutro Bros. & Co. was closed today at this office in accordance with the letter agreement of December 7, 1954, between our Company and Sutro Bros. & Co. and my subsequent conversations with you.

At the closing we delivered to representatives of Sutro Bros. & Co. certificates representing the 53,000 shares of stock, to which the necessary Federal and State stamp taxes had been duly attached and cancelled, and accompanied by stock powers executed on behalf of our Company and certified copies of Resolutions evidencing the authority of the President of our Company to sell such shares and the authority of the Treasurer to sign the necessary endorsements to effect their transfer. The representatives of Sutro Bros. & Co. handed us a certified check for $1,028,200. representing the $1,060,000. purchase price of the shares less the $31,800. dividend (30¢ regular and 30¢ extra) which we had received on the shares on December 30, 1954. They also handed us a receipt for the stock certificates. This closes the transactions contemplated by the December 7, 1954 letter agreement.

Sutro purchased these shares as agent for petitioner.

Petitioner paid for the 53,000 shares of General stock by checks delivered to Sutro on January 24, 1955, and January 25, 1955, for

$1,060,000 plus broker's commission. On January 26, 1955, Sutro delivered its check to petitioner for $31,800, representing the amount of the dividends paid by General to American on December 31, 1954.

American reported the sale of the 53,000 shares on its income tax return for the year 1955. It reported that the sale took place on January 18, 1955, and that it received $1,028,200 as proceeds of the sale.

At all pertinent times General was a domestic corporation subject to taxation under chapter 1 of the Internal Revenue Code of 1954.

Until January 11, 1955, the contract of stock purchase between petitioner and American remained executory in nature for the conditions making it binding on the parties had not been met until that date.

The payment of $31,800 from General to American constituted dividends, but the payment of a like amount by Sutro to petitioner amounted to a mere adjustment of petitioner's cost of the General stock.

The dividends-received deduction sought by petitioner is that which is provided by section 243(a) of the Internal Revenue Code of 1954.[1] In pertinent part, section 316(a) defines "dividend" as any distribution of property made by a corporation *to its shareholders* out of its earnings and profits. If petitioner was a shareholder on the record date, December 20, 1954, prescribed by General's declaration of the dividend here in controversy, it is entitled to the deduction. If not, it is not so entitled.

Petitioner contends that through Sutro, acting as its agent, it made on December 7, 1954, a contract to purchase the involved General stock and that by the contract it then acquired all the benefits appurtenant thereto including the dividends paid thereon from and after that date. It follows, it reasons, that it is entitled to the deduction here sought. We cannot agree that the $31,800 payment made by American to petitioner constituted the payment of a dividend for the reason that we cannot conclude from the record that petitioner was either a shareholder of General or actual owner of the stock on the record date prescribed by the declaration of the dividend in question.

We approach the question upon the assumption that Sutro in negotiating with American for the purchase of General stock was acting as petitioner's agent although the record is by no means clear on this point for the reason that petitioner's formal incorporation did not take place until December 22, 1954, 15 days subsequent to

---

[1] SEC. 243. DIVIDENDS RECEIVED BY CORPORATIONS.

(a) GENERAL RULE.—In the case of a corporation, there shall be allowed as a deduction an amount equal to 85 percent of the amount received as dividends (other than dividends described in paragraph (1) of section 244, relating to dividends on the preferred stock of a public utility) from a domestic corporation which is subject to taxation under this chapter.

the date of American's offer to sell. Even so, however, upon acceptance of that offer, nothing but an executory contract resulted whereby, until January 11, 1955, neither party was bound. Until that date the express condition upon which the offer and acceptance were made had not been satisfied. Only after that date when the "no action" letter of the Securities and Exchange Commission had been issued can it be said that either party had altered its position with respect to the ownership of the stock in question. Only then could petitioner upon tender of the purchase price enforce transfer to it of such ownership. It follows that the payment to it by Sutro of $31,800 which was labeled a dividend was not the dividend envisaged by section 316(a).

In this regard it is clear that the parties to the transaction so construed their agreement. American reported the sale of the stock in its 1955 return as having occurred on January 18, 1955, the closing date, that it received $1,028,200 as proceeds of the sale, and reported in its 1954 return that it had received a dividend on the stock of $31,800. Under petitioner's theory, American should have reported the sale in its 1954 return, a receipt, as purchase price, of $1,060,000, and should not have reported the receipt of the above dividend therein. In a letter accompanying its first return for 1954, dated February 14, 1955, petitioner notified respondent that from the date of its incorporation for the remainder of its taxable year (December 22, 1954, to December 31, 1954), it had acquired no assets or incurred no liabilities and "there was no business transacted which would reflect Income or Expenses." It appears petitioner's present position is mere afterthought.

In any event American certainly could not under any circumstances pay either Sutro or petitioner a dividend as such upon General stock. Even though it agreed on December 7, 1954, in its letter offer to sell, that all dividends paid on the stock thereafter "shall be" the property of the purchaser, the effect of such an offer when accepted by petitioner was merely to bind American to pay to petitioner an amount equal to the known dividends if and when the conditions precedent had been met. This, in turn, in substance was an adjustment of the purchase price and was so considered by both parties to the contract.

Viewed from the standpoint of the existence or nonexistence during December 1954 of a contract of purchase and sale of General stock between petitioner and American, the record is insufficient to support petitioner's contention that one did exist. There is a clear offer to sell by American, but we can find no evidence in the record from which we can conclude there was an acceptance thereof by petitioner until January 18, 1955, when it paid the purchase price called for by the offer. It follows that petitioner has failed to show the existence of a contract prior to that date. It therefore had no interest in American's General stock, beneficial or otherwise.

Petitioner cites *Rupe Investment Corporation*, 30 T.C. 240, affd. 266 F. 2d 624 ('C.A. 5), which it contends requires an opposite conclusion. That case is clearly distinguishable from this for there the issue decided was whether Rupe as agent was entitled to a dividends-received credit where dividends were paid upon stock held by it in its name for a principal. An entirely different issue is here presented. Other cases cited by petitioner are so distinguishable factually as to have no bearing upon decision here.

Respondent's determination of a deficiency is sustained.

Because of other adjustments agreed to by the parties—

*Decision will be entered under Rule 50.*