JOSEPH L. O'BRIEN CO., Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE.

No. 13676.

United States Court of Appeals Third Circuit.

Argued Dec. 21, 1961.

Decided April 9, 1962.

As Amended April 23, 1962.

---

Francis T. Anderson, Philadelphia, Pa., for petitioner.

Morton K. Rothschild, Washington, D. C. (John B. Jones, Jr., Acting Asst. Atty. Gen., Lee A. Jackson, Attorney, Department of Justice, Washington, D. C., on the brief), for respondent.

Before McLAUGHLIN, KALODNER and HASTIE, Circuit Judges.

KALODNER, Circuit Judge.

The petitioner, Joseph L. O'Brien Co., filed this petition to review the decision of the Tax Court [1] which rejected its contention that it was entitled to a dividends-received deduction for 1955 under the provisions of the Internal Revenue Code of 1954.[2]

The single issue presented is whether petitioner was the beneficial owner of stock on the record date on which a certain dividend was declared payable under the terms of a contingent contract of sale entered into prior to that date and consummated thereafter.

The facts as stipulated and found by the Tax Court are substantially as follows:

The petitioner is a corporation organized on December 22, 1954, under the laws of Pennsylvania. Its first income tax return was for the period December 22, 1954, to December 31, 1954. Thereafter its returns were filed on a calendar year cash basis. The taxpayer's return for the year 1955, the year involved herein, was filed with the District Director of Internal Revenue at Philadelphia, Pennsylvania. Accompanying the filing of its first return was a letter to the Director which contained the following:

"This Corporation was organized under the laws of the State of Pennsylvania .on December 22, 1954. From that date to December 31, 1954, there were no Assets or Liabilities acquired and there was no business transacted which would reflect Income or Expenses."

On December 7, 1954, American Locomotive Company ("American") wrote to

---

1. Reported at 35 T.C. 750 (1961).

2. The relevant provisions of the Internal Revenue Code of 1954 provide as follows:

"§ 243. Dividends received by corporations.

"(a) General rule.—In the case of a corporation, there shall be allowed as a deduction an amount equal to 85 percent of the amount received as dividends (other than dividends described in paragraph (1) of section 244, relating to dividends on the preferred stock of a public utility) from a domestic corporation which is subject to taxation under this chapter." 26 U.S.C.A. § 243.

"§ 316. Dividend defined

"(a) General rule.—For purposes of this subtitle, the term 'dividend' means any distribution of property made by a corporation to its shareholders—

"(1) out of its earnings and profits accumulated after February 28, 1913, * * *." 26 U.S.C.A. § 316.

Sutro Brothers & Company, stockbrokers ("Sutro"), to confirm an understanding regarding the proposed purchase by Sutro from American of 53,000 shares of the outstanding common stock of General Steel Castings Corporation, a Delaware corporation ("General"), as follows:

"December 7, 1954

"Sutro Brothers
120 Broadway
New York, N. Y.

"Gentlemen:

"This will serve to confirm our understanding with you relative to your purchase of 53,000 shares of the outstanding common stock of General Steel Casting Corporation, of which we are now the owner.

"Subject to the provisions set forth below, we agree to sell such shares to you, and you agree to buy the same from us, at a purchase price of $20.-00 per share, making an aggregate purchase price of $1,060,000. It is understood that no commissions will be payable by us in connection with this transaction, and by acceptance of this letter you agree to indemnify us for liability of any such commissions.

"As we have advised you, an opinion has been requested from the Securities Exchange Commission to the effect that the sale of these shares by us will not require the filing of a registration statement under the Securities Act of 1933, as amended. We hope to obtain a so-called 'no action' letter in this regard from the Securities Exchange Commission sometime next week. It is understood that upon our receipt of such a 'no action' letter on or before December 28, 1954, we shall deliver on not less than two, and not more than three, business days notice to you after such receipt a certificate or certificates for the shares referred to above, duly endorsed for transfer and with federal and state transfer stamps attached, to you and that you will pay us the purchase price therefor. If a 'no action' letter is not received on or before the date mentioned above, we will request General Steel Castings Corporation to file an appropriate registration statement and to comply with the other requirements of the Securities Act of 1933 to the end that the purchase and sale of the above securities may be legally consummated. If such a registration statement is so filed and becomes effective within the time limit hereinafter set forth, we will deliver the certificate or certificates for the above-mentioned shares, duly endorsed for transfer and with federal and state transfer stamps attached, to you against receipt of the purchase price therefor on two business days notice to you but not later than three business days after the effective date of the registration statement.

"If a 'no action' letter is not received from the Securities Exchange Commission on or before December 28, 1954, and if a registration statement as aforesaid with respect to these securities fails to become effective on or before April 15, 1955, this agreement shall become ineffective and there shall be no further rights or liabilities on the parts of either of us because of the transaction covered hereby.

"If the transaction is consummated as herein provided, all dividends paid or payable on the said stock after the date hereof shall be your property and shall be paid over at the time of payment of the purchase price, but without liability for interest thereon.

"If it becomes necessary to file a registration statement in order to consummate the transaction, you will pay interest to us on the purchase price ($1,060,000) at the rate of 3% per annum from December 28, 1954 to the date of delivery. Such interest will be payable to us on such delivery date.

"If the foregoing meets with your approval kindly indicate your assent by signing the endorsement at the foot of this letter and returning the same to us, retaining the copy for your files.

"Very truly yours,

"American Locomotive Company

"By (s) Herman Press
*Treasurer*

"Accepted.

"December 7, 1954

"Sutro Brothers

"By (s) Charles A. Bezer"

Previously, on October 29, 1954, General had declared a regular dividend of 30·cents per share and an extra dividend of 30 cents per share on its common stock. The dividends were declared to be payable and actually were paid on December 31, 1954, to stockholders of record on December 20, 1954. The dividends on the 53,000 shares in question, totaling $31,800 were paid to American, which was the stockholder of record on December 20, 1954. American reported the $31,800 as a dividend received on its income tax return for the year 1954.

The Securities and Exchange Commission under date of January 11, 1955, issued a "no-action" letter to American in regard to the proposed sale of 53,000 shares of General common stock. The sale of this stock was consummated on January 18, 1955 in the manner described in a letter of that date addressed by W. J. Bolte of American to William McDermott, attorney for the taxpayer, as follows:

"The sale of 53,000 shares of common stock of General Steel Castings Corporation by our Company to Sutro Bros. & Co. was closed today at this office in accordance with the letter agreement of December 7, 1954 between our Company and Sutro Bros. & Co. and my subsequent conversations with you.

"At the closing we delivered to representatives of Sutro Bros. & Co. certificates representing the 53,000 shares of stock, to which the necessary Federal and State stamp taxes had been duly attached and cancelled, and accompanied by stock powers executed on behalf of our Company and certified copies of Resolutions evidencing the authority of the President of our Company to sell such shares and the authority of the Treasurer to sign the necessary endorsements to effect their transfer. The representatives of Sutro Bros. & Co. handed us a certified check for $1,028,200 representing the $1,-060,000 purchase price of the shares less the $31,800 dividend (30¢ regular and 30¢ extra) which we had received on the shares on December 30, 1954. They also handed us a receipt for the stock certificates. This closes the transactions contemplated by the December 7, 1954 letter agreement."

Sutro purchased these shares as agent for the taxpayer.

The taxpayer paid for the 53,000 shares of General stock by checks delivered to Sutro on January 24, 1955, and January 25, 1955, for $1,060,000 plus broker's commission. On January 26, 1955, Sutro delivered its check to the taxpayer for $31,800, representing the amount of the dividends paid by General to American on December 31, 1954.

American reported the sale of the 53,000 shares on its income tax return for the year 1955. It reported that the sale took place on January 18, 1955, and that it received $1,028,200 as proceeds of the sale.

At all pertinent times General was a domestic corporation, subject to taxation under Chapter 1 of the Internal Revenue Code of 1954.

On the facts as stated, the Tax Court held that petitioner "on the record date prescribed by the declaration of the dividend in question * * * had no interest in American's General stock, beneficial or otherwise", and accordingly was not entitled to its claimed dividends-received deduction with respect to the $31,800

payment on January 26, 1955. The Tax Court premised its holding on its view that the December 1954 contract for the purchase of American's General stock was "executory" until January 11, 1955 when the "no-action" letter of the Securities and Exchange Commission was issued and that "neither party [to the contract] was bound" until that date.

Petitioner here concedes that "in the case at bar the contract was conditional" but contends that since it "was ultimately carried out, in accordance with its terms, the fact that it was originally conditional in nature is wholly immaterial for all purposes."

The respondent Commissioner, in reply, asserts that the Tax Court correctly decided that petitioner was not the beneficial owner of the General stock on the dividend record date in 1954.

On review of the record we are of the opinion that the Tax Court did not err in its disposition.

It may be stated preliminarily that we are assuming, as the Tax Court did, "that Sutro in negotiating with American for the purchase of General stock was acting as petitioner's agent" even though the agreement of December 7, 1954 between Sutro and American preceded by 15 days petitioner's incorporation on December 22, 1954.

The agreement of December 7, 1954 for the sale by American of its 53,000 shares of its General stock to Sutro was provisional in that it provided:

"If a 'no action' letter is not received from the Securities Exchange Commission on or before December 28, 1954, and if a registration statement as aforesaid with respect to these securities fails to become effective on or before April 15, 1955, this agreement shall become ineffective and there shall be no further rights or liabilities on the parts of either of us because of the transaction covered hereby."

The letter spelled out American's commitment to sell to Sutro its 53,000 shares of General stock *only* if the Securities and Exchange Commission gave its "no-action" letter or, in the alternative, made effective a registration statement to be filed by General.

That being so, the agreement to sell— and buy—was based on a contingency which might never have materialized, and such an agreement does not vest any rights—beneficial or otherwise—until the materialization of the contingent event. It follows that petitioner's contention that it was vested with a beneficial interest in American's General stock prior to the Securities and Exchange Commission's "no-action" letter of January 11, 1955 is without merit. It was only on the latter date that a beneficial interest was vested in American's General stock in petitioner (via Sutro) and accordingly it was not entitled to payment of the dividends accruable to stockholders of record or beneficial owners, on December 20, 1954.

American on December 20, 1954 was the beneficial as well as the legal owner of its General stock and it alone was entitled to the dividends-received deduction provided by the relevant sections of the Internal Revenue Code of 1954 earlier cited.

The circumstance that the terms of the December 7, 1954 letter provided that "all dividends paid or payable on the said stock after the date hereof shall be your property and shall be paid over at the time of the purchase price * * *" is immaterial to the resolution here of the issue as to the application of the "dividends-received" deduction under the 1954 Code. The hard fact is that what the petitioner here labels a "dividend" was actually an allowance in reduction of cost of stock.

On this score, what was said by Judge Goodrich, speaking for this Court in Bakers' Mutual Cooperative Ass'n of Newark, N. J. v. Commissioner of Internal Revenue, 117 F.2d 27 (1941) at page 28 is pertinent here:

"We think it perfectly clear that the money paid out to the holders of these certificates is not to be classed

as interest but dividends. What the parties have called the certificates or the payments is not, of course, controlling. They have not used their terms as terms of art, and, even if they had, the legal conclusion to be drawn from them is for the court." [3]

It merits observation that, as disclosed by American's letter to petitioner's counsel of January 18, 1955, when Sutro made settlement with American for the General stock it paid only $1,028,000 against the agreed $1,060,000 purchase price—an adjustment in price of $31,800. Further, as earlier stated, American, in its 1955 income tax return, reported the proceeds of the sale as being $1,028,000, treating the $31,800 at issue here as an adjustment of the sale price of the stock.

It may be stated, in conclusion, that we have found the cases cited by petitioner inapposite.

For the reason stated the Decision of the Tax Court will be affirmed.

---

3. See also John Kelley Co. v. Commissioner of Internal Revenue, 326 U.S. 521, 524–526, 66 S.Ct. 299, 90 L.Ed. 278 (1946).